UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-60078-AHS

UNITED STATES OF AMERICA

v.

SUNSEEKER INTERNATIONAL LIMITED., and
SUNSEEKER USA SALES CO., INC.,

Defendants.

_____/

## FACTUAL PROFFER

The Environmental Crimes Section of the Environment and Natural Resources Division of the United States Department of Justice, and the United States Attorney's Office for the Southern District of Florida (collectively, the "Government"), and Sunseeker International Limited and Sunseeker USA Sales Co., Inc. (collectively, the "Defendant") agree that, had this case proceeded to trial, the United States would have presented evidence proving the following beyond a reasonable doubt:

A. Defendants

1.      Sunseeker International (Holdings) Limited is an international holding company registered in the United Kingdom and the parent company of two subsidiaries. The two subsidiaries are: (i) Sunseeker USA Sales Co., Inc. ("Sunseeker USA") and Sunseeker International Limited ("Sunseeker International").

2.      Sunseeker USA was incorporated in the state of Delaware and is registered in the state of Florida with its principal place of business located in Hollywood, Florida.

3.      Sunseeker International is registered in the UK and is located at an address in Poole,

England, where it builds luxury yachts, which are sold internationally. It currently has two Directors, one of whom is also the sole Director and President of Sunseeker USA, who lists an address in Poole, England. Sunseeker is self-described as "the world's leading brand for luxury performance motor yachts". A Miami-based private equity firm and two Italian private equity firms own Sunseeker International (Holdings) Limited.

B. Underlying Foreign Law

4. The European Union Timber Regulation (Regulation (EU) No. 995/2010) ("EUTR") established obligations for businesses trading in timber and timber-related products in the European Union (EU) which, before January 1, 2021, included the UK. The EUTR was implemented in the UK by the Timber and Timber Products (Placing on the Market) Regulations 2013, as amended (SI 2013/233), (the "UKTR"). The purpose of the legislation was to prevent timber that was illegally harvested from being placed on the market in the EU. The harm of illegally harvested timber identified in the EUTR included forcing reputable traders out of business and destroying wildlife habitats. Such practices undermined sustainable harvesting practices and global forest governance.

5. Under Article 4 of the EUTR, the placing on the market of illegally harvested timber or timber products derived from such timber is prohibited. An Operator (any legal or natural person that places timber or timber products on the relevant market) must exercise due diligence when placing timber or timber products on the market. To that end, the Operator must use a framework of procedures and measures, described as a 'due diligence system,' which the Operator must maintain and regularly evaluate, unless it uses a due diligence system established by an approved monitoring organization.

6. Under the EUTR/UKTR, an Operator must exercise due diligence by assessing the

risk of illegality of the timber product and conclude, if needed after undertaking mitigating measures, that there is a negligible risk of illegality. If it is not possible to mitigate the risk to negligible, the Operator shall not place the product on the relevant market, that is, sell the product. Due diligence under the EUTR also includes checking if sanctions are in place regarding the timber or timber product being imported, the prevalence of illegal harvesting of the specific tree species, and consideration of the complexity of the supply chain.

7. Prior to January 1, 2021, Sunseeker International was a Trader (a legal or natural person who, during a commercial activity, sells or buys timber products on the relevant market) under the EUTR/UKTR. The relevant market at that time was the EU single market and, as Sunseeker International was not placing timber or timber products on the EU market for the first time, it was only classified as a Trader. As a Trader, Sunseeker International was only required to keep records of its purchases and re-sales of timber, including the identity of its suppliers. It was not obligated to implement a due diligence system as required by Operators.

8. As of January 1, 2021 ("Brexit") (when the UK left the EU single market and customs union, just under a year after the departure of the UK from the EU on January 31, 2020), the UKTR were amended such that the relevant 'market' became the UK market. Therefore, on January 1, 2021, Sunseeker International became an Operator, if it placed timber or timber products on the UK market for the first time.

C. Awareness of Myanmar Teak

9. In November 2016, a Swedish court found that a certificate issued by the Myanmar Forest Products Merchant's Federation did not provide adequate proof that a shipment of teak imported into Sweden had been legally harvested. According to public reports, "importers need to be able to establish exactly where in the country the wood products were harvested, by whom, and

3

develop robust systems to demonstrate that the necessary risk assessment and mitigation measures have been completed. The ruling was based on a judgement that the collection of standard MFPMF paperwork does not represent adequate Due Diligence." Forest Trends, Dated November 22, 2016.

10.  In March 2017, a Danish court enjoined all Danish companies from selling teak imported from Myanmar on European markets because they could not adequately minimize the risk of importing illegally harvested timber. This ruling was publicly reported.

11.  In September 2017, the FLEGT/EU Expert Group provided guidance to EU members regarding Operator obligations and noted, while efforts in Myanmar to improve matters were moving in the right direction, how challenging it was to complete due diligence that satisfied the obligations of the EUTR for timber being imported via a supply chain involving Myanmar. In its case against Sunseeker International in the UK, the UK Office for Product Safety and Standards ("OPSS") asserted that since September 2017, it has been the shared conclusion of all EU Member states (including the UK) that it was not considered possible to complete due diligence that satisfied the obligations of the EUTR for timber, most notably teak, being imported either directly or indirectly from Myanmar. The OPSS argued that this "shared conclusion" had been reached for these reasons:

a.  The EUTR required the concession of harvest be identified by the Operator. The OPSS stated that it was illegal under Myanmar law to purchase timber from anyone other than the Myanmar Timber Enterprise (MTE) which is part of the Myanmar Ministry of Environmental Conservation and Forestry. The documents provided to a purchaser by the MTE did not identify the concession of harvest.

b.  The EUTR required the Operator to assess the risk of illegal logging in the

4

country of origin. According to the OPSS, certain publications specializing in identifying the illegal harvesting of timber, EU Commission reports, and the Preferred by Nature Sourcing Hub identified the risk of illegal logging including timber laundering, corruptly issued documents and physical illegal logging were prevalent in Myanmar.

c. The EUTR required the Operator to assess the prevalence of armed conflict in the region the timber was harvested, and where the harvesting of timber is known to support armed conflict, the timber should not be used. According to the OPSS, the harvesting of timber (specifically teak) was known to financially support the current and previous dictatorship in Myanmar and, as the documents issued at the time of purchase by the MTE do not identify the region of harvest, it was not possible to identify if timber was harvested from conflict areas within Myanmar.

12. In February 2018, an environmental non-governmental organization informed representatives from Sunseeker International in writing and during an in-person meeting that: (1) at least one of its suppliers of teak (an Operator under the EUTR) from Myanmar had been found in violation of the EUTR due diligence requirements, (2) the EUTR Group of Experts had concluded that none of the assurances presented by Operators regarding the legality of Myanmar teak were sufficient for compliance with the EUTR due diligence obligations, and (3) Myanmar remained a very high risk country. The written communication quoted the UK Timber Federation, an industry association, "It remains extremely difficult to fully document the Myanmar supply chain from forest source to export. Therefore, without full documentation, it becomes very difficult to conduct due diligence, and to therefore prove that your risk has been reduced to negligible."

The communication also noted that violations of the EUTR are predicate offenses under the Lacey Act and imports of such timber into the U.S. would render it contraband under the Lacey Act.

13.     In January 2018, Sunseeker International's marketing director, was quoted in an article entitled, "British Builders still using illegal Burmese [Myanmar] Teak," stating, "[a]s far as we're aware, according to our investigation, we're not in breach…There is ethically-sourced teak out there. We believe that's in our supply chain. We've done our due diligence as much as we believe is physically possible." This statement indicated Sunseeker International was aware of a January 2018 report by the above environmental non-governmental organization stating that Sunseeker was using in its yachts teak from Myanmar traded in violation of the EUTR. Teak from an Operator found to violate the EUTR was tracked in at least eight Sunseeker International boats imported into the United States in 2017.

14.     In an email dated December 16, 2020, related to the exit of the UK from the EU, the OPSS informed an employee at Sunseeker International that the EUTR would become UK domestic legislation and that Operators (the entities that first place the timber or timber product on the market in the UK) must exercise due diligence when placing timber or timber product on the UK market for the first time and must maintain and regularly evaluate the due diligence system they use to ensure that there is a negligible risk that such timber has been illegally harvested. The OPSS stated in that email: "Note that businesses that may have been considered Traders under EUTR may be considered Operators under the new Timber Regulations. Teak is in scope of the regulation and you will need to conduct due diligence on imports from the EU. Due to the risks associated with the species, you will need to demonstrate sufficient risk mitigation and bring the possibility of illegally harvested teak from entering into your supply chain down to negligible."

15.     On February 1, 2021, a military coup overthrew the democratically elected

6

government of Myanmar. In April 2021, both the UK and the United States imposed sanctions against Myanmar. The United States imposed sanctions against the MTE, the sole authorized seller of export teak harvested in Myanmar, prohibiting all transactions by U.S. persons or within (or transiting) the United States that involve any property or interests in property associated with the MTE. From June 2021, the UK added MTE to the UK consolidated list of asset freeze targets. There is no evidence Sunseeker violated any of these applicable sanctions laws.

16.    In late 2021, Sunseeker was notified by the Government that it was under investigation for potential violations of the Lacey Act related to imports of Myanmar teak from the United Kingdom. Sunseeker cooperated with the Government's investigation, including by entering into three consecutive tolling agreements to suspend the running of the applicable Statute of Limitations.

17.    In February 2022, UK authorities began requesting information from Sunseeker International regarding its purchase and sale of teak. By letter dated March 17, 2022, the OPSS requested Sunseeker International, as part of a national enforcement activity, provide its due diligence system with respect to a teak balcony door. Sunseeker International responded. UK authorities concluded on May 9, 2022, that Sunseeker International "have failed to complete due diligence as required under article 4(2) of the Timber Regulation (obligation to exercise due diligence) and therefore committed an offense under PART 2 4(b) of The Timber and Timber Products (placing on the market) Regulations 2013 as amended. As per summary above, Sunseeker International was aware of the UKTR requirements and had knowingly failed to comply with the regulation."

18.    In a letter dated September 9, 2022, to the OPSS, Sunseeker International acknowledged that it did not demonstrate a full due diligence system and had not conducted due

diligence for ten specific imports of wood, including Myanmar teak, into the UK between April 2021 and July 2022 sufficient to meet UK law. Sunseeker International also wrote, in response to a written question asking when and how it first became aware of the risks associated with importing teak from Myanmar, that it "began to understand the potentially sensitive nature of Myanmar teak in or around 2015 or early 2016. At this time (and until January 2021), Sunseeker International operated exclusively as a trader under the EUTR." Sunseeker International also noted that it "was not obliged to undertake due diligence of its supply chain or confirm that wood had been legally harvested, as these obligations fell to [O]perators (as defined under the [EUTR]) who placed teak on the market for the first time."

D.     Sunseeker's Conduct

19.     Between 2021 and 2023, in respect of Myanmar teak that Sunseeker International procured from the EU as an Operator, Sunseeker International knowingly sold, and shipped into the United States yachts containing, and parts for yachts made of, teak harvested in Myanmar that Sunseeker should have known were transported and sold into the UK in violation of the UKTR.

20.     Sunseeker International did not create or maintain a due diligence system to ensure the risk that its Myanmar teak imports were illegal was negligible, which was required of Sunseeker as an Operator under the UKTR since January 2021.

21.     In addition, Sunseeker International, acting as a Trader under the UKTR, continued to legally purchase teak from suppliers in the UK and fit such timber onto boats bound for the United States.

22.     In February 2023, Sunseeker International adopted a policy of no longer procuring or using Myanmar teak.

23.     On April 11, 2023, Sunseeker International was charged in the UK with three

8

counts of violating the UKTR. Charge 1 alleged that Sunseeker International imported timber or timber products on eleven occasions between April 2021 and July 2022, without exercising due diligence as required by Regulation 4(b) of the UKTR. Charges 2 and 3 alleged that Sunseeker International violated Regulation 4(c) and Regulation 4(e) of the UKTR, respectively, by making those same eleven imports without maintaining a due diligence system and failing to keep required records, respectively.

24.     On June 14, 2023, Sunseeker International pleaded guilty to all three counts in relation to eleven imports of yachts containing teak. Importantly, Sunseeker International was charged with a strict liability offense and pleaded guilty at the first instance. The OPSS acknowledged the imports of yachts that included teak were valued at approximately €4,000.

25.     On November 25, 2024, at sentencing, the UK Crown Court found that the resulting harm was of the highest category, but that the culpability was "high" rather than "very high" (which equates to a finding of recklessness on Sunseeker International's part rather than a deliberate breach), as the "company failed at a systemic level to address the obvious environmental and social risks that accompany the continued presence of unregulated rare hard woods in it supply chain." The Crown Court, however, recognized that there were no aggravating factors to Sunseeker International's conduct and that, according to the appropriate UK sentencing principles, Sunseeker was entitled to a significant reduction of its fine to reflect mitigating steps it had taken and its early acknowledgment of guilt. Accordingly, the Crown Court ordered SIL to pay an amount of £358,760.60.

26.     Teak from some of the specific imports that form the basis of the OPSS investigation were imported into the United States after being incorporated into yachts, or with the intent that the items be included in yachts, including, but not limited to, the following example:

9

a. A teak balcony door sold by Sunseeker International to Sunseeker USA on May 27, 2021, for $654.91, intended to be incorporated into a yacht, boat project number 8651986. The door was imported on or about September 27, 2021, (entry number14206566451; port of entry Norfolk-Newport News, Virginia) for delivery to a third-party Yachting Center within the Southern District of Florida.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

27.     In addition, in 2021, Sunseeker International, as a Trader, purchased Myanmar teak from a UK supplier. OPSS contends the UK supplier's purchase of such teak as an Operator was a violation of underlying foreign law. Sunseeker International then placed approximately £15,543 (approximately $20,400 USD) of teak on two boats, a Predator 74 (boat number 4012274, declared value $2,981,903.00) and a Manhattan 55 (boat number 3362255, declared value $1,074,981.00). Sunseeker International then sold these boats to Sunseeker USA Sales, Inc., and imported them into the United States to Sunseeker USA Sales, Inc., in Hollywood, Forida around April 2022.

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

Date: 5/11/26          By: _____ for

DANIEL ROSENFELD
ASSISTANT UNITED STATES ATTORNEY


ADAM R.F. GUSTAFSON
PRINCIPAL DEPUTY ASSIST. ATTY. GEN.
UNITED STATES DEPARTMENT OF JUSTICE

Date: 5/11/26          By: _____

EMILY R. STONE
TRIAL ATTORNEY

Date: 5/11/26          By: _____

SEAN P. SHECTER
ATTORNEY FOR DEFENDANT

Date: 5/11/26          By: _____

SUNSEEKER INTERNATIONAL LIMITED
DEFENDANT

Date: 5/11/26          By: _____

SUNSEEKER USA SALES CO., INC
DEFENDANT

11